IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE MCREVY and SAMANTHA MULKEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 08-508-CG-B ) |
| STEPHEN BLAKE RYAN, | ) ) |
| Defendant. | ) |

### ORDER

This matter is before the court on plaintiffs' motion for new trial and alternative motion for additur (Doc. 87), defendant's response thereto (Doc. 89), and plaintiffs' reply (Doc. 90). The court finds that there was substantial evidence to support the jury's verdicts, that the verdicts are not inconsistent or against the great weight of the evidence, and that the correct amount of damages is disputed by the parties. Therefore, plaintiffs' motion for new trial or for additur is due to be denied.

### BACKGROUND

This case involves a motor vehicle accident that occurred on September 7, 2006. Plaintiffs allege that defendant negligently operated a vehicle so as to cause or allow the vehicle to strike the rear of the vehicle in which plaintiffs were passengers. Defendant did not contest liability, but disputed the extent of any injuries sustained by the plaintiffs and the appropriate measures of damages. The jury returned a general verdict in favor of plaintiffs and awarded each plaintiff damages in the amount of $5,000.

## **DISCUSSION**

Plaintiffs' motion is brought pursuant to Rule 59(a), which provides, in the context of jury trials, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a)(1).  District courts are entrusted with broad discretion in determining whether a new trial is warranted in a particular case. See, e.g., Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 644 (11th Cir. 1990).   However, the remedy of granting a motion for new trial "is sparingly used." Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 375 (1st Cir. 2004) (citation omitted). The Eleventh Circuit has specifically instructed district courts that a motion for new trial should be granted when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.... Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotations and citations omitted); Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1559 (11th Cir. 1984) ("The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow," and is limited to "protect[ing] against manifest injustice in the jury's verdict."); Pozzi Window Co. v. Auto-Owners Ins. Co., 429 F.Supp.2d 1311, 1323 (S.D. Fla. 2004) ("A trial judge may grant a motion for new trial if the jury verdict is contrary to the great weight of the evidence"; however, he may not "simply substitute his judgment for that of

the jury.")

Plaintiffs argue that a motion for new trial should be granted when the amount of the verdict is so unreasonable as to be entirely disproportionate to the plaintiffs' injury. Plaintiffs cite Brown v. Foster, 636 So.2d 468, 469 (Ala.Civ.App. 1994) which states that "where liability is proven, the verdict must include an amount at least as high as the uncontradicted special damages, as well as an amount sufficient to make any compensation for pain and suffering." Plaintiffs assert that the testimony and record unequivocally demonstrate that plaintiff McRevy incurred $18,533.13 in medical special damages and that plaintiff Mulvey incurred $10,411.60 in medical special damages. (Doc. 87-1, p. 9). Yet, the jury only awarded plaintiffs $5,000 each. Thus, plaintiffs argue that a new trial is warranted because the jury failed to award plaintiffs the uncontradicted special damages or any damages for pain and suffering and the verdict was, therefore, inconsistent. The court notes that in Brown, the Court affirmed the lower court's denial of the plaintiff's motion for new trial, finding that the jury could have concluded from the evidence that the special damages were contradicted and that the degree and source of the pain and suffering were contradicted. Id. at 470.[1]  Similarly, this court finds that, in the instant case, there was evidence from which a jury could conclude that the special damages, as well as the degree and source of the pain and suffering, were contradicted. The correct amount of damages in this case was in dispute.

---

[1] In Brown, the plaintiff argued that the jury verdict arising out of her automobile accident was inadequate because the award of $2,940 did not include any compensation for pain and suffering, where she had proven $2,630.50 in medical bills and $400 in lost wages. The Court held that the verdict was not inadequate because the testimony had been disputed regarding the amount of her lost wages and, therefore, the damages award indicated that the jury may have awarded some smaller amount for pain and suffering. Brown, 636 So.2d at 469-470.

Plaintiffs argue that the defense called no expert witness to rebut or contradict the expert opinions of plaintiffs' witnesses and did not object to the introduction of any of plaintiffs' exhibits.  Plaintiffs point out that Dr. Haydel, a Board Certified Chiropractor, testified concerning both McRevy's and Mulkey's complaints of aches and pains, their medical treatment and diagnosis, and opined that it was more probable than not that plaintiffs' injuries were related to the accident.  Dr. Meyer, an orthopedic surgeon, also testified regarding Mulkey's diagnosis and opined that Mulkey could expect to suffer permanently.  A second chiropractor, Dr. Ledet, testified concerning McRevy's injuries and paralleled Dr. Haydel's testimony.  However, a review of the trial transcript reveals that there was ample evidence that plaintiffs' were not injured to the degree claimed as a result of the accident at issue.  The facts clearly show that the amount of the loss or damage incurred by plaintiffs were in dispute.

As defendant points out, although defendant did not object to the admissibility of the medical bills, defense counsel pointed out that the medical treatment provided by the various chiropractors and doctors in this case was self-contradictory.  Through cross-examination of the plaintiffs and cross-examination of the medical witnesses, defense counsel elicited testimony from which a jury could conclude that there were inherent contradictions in the medical records and testimony and that the plaintiffs' injuries from the accident at issue were not as severe as claimed.  For instance, Dr. Haydel, a chiropractor, testified that his diagnosis differed from Dr. Greenberg in their assessment of Mulkey's injuries. (Transcript, Doc. 91, pp. 104-105).  Dr. Haydel also testified that the X-rays indicated that Mulkey had no fractures or gross dislocations or pathologies, recent or old. (Doc. 91, p. 111).  Dr. Haydel testified that Mulkey's MRI showed that there was a barely perceptible posterior bulging of Mulkey's disk in the C4-C5 area, but he

had not reviewed any MRI's of Ms. Mulkey that were taken before the accident. (Doc. 91, pp. 112, 113). Ms. Mulkey also had disk problems in the L4-5 and L5-S1 area, but again, Dr. Haydel had no previous images to compare the condition of Mulkey's back prior to the accident. (Doc. 91, p. 114). Dr. Haydel testified that he had begun a course of treatment for Ms. Mulkey, but that he was not seeing her at that point in time and was not continuing the course of treatment. (Doc. 91, p. 119). Dr. Haydel also testified that Mulkey was pregnant at the time of the accident and that it is possible and even normal to have back pain when you are pregnant. (Doc. 91, p. 223). Dr. Haydel reported that he did not actually review or see the MRI films, that she was referred out to an imaging specialist, and he disagreed with the radiologist's findings that the loss of cervical lordosis may be due to muscle spasms or patient positioning. (Doc. 91, pp. 223-224). Dr. Haydel's notes indicated that Mulkey's treatment was going well and the pain in her back had decreased significantly. (Doc. 91, p. 225).

Dr. Meyer testified that he treated Ms. Mulkey for pain although her X-rays were normal. (Doc. 91, p. 139). Dr. Meyer stated Mulkey had no scheduled visits that he was aware of and that he had last seen her about two years ago, in May 2008. (Doc. 91, p. 139). Dr. Meyer confirmed that without reviewing prior MRIs of Ms. Mulkey, there was no way to know whether the trauma of the accident caused her problems or whether it was caused by degenerative disk disease. (Doc. 91, p. 140).

Dr. Ledet testified that the MRIs did not reveal any posterior bulging in the C5-C6 region. (Doc. 91, pp. 281-282). Dr. Ledet did find that there was a minimal desiccation or loss of hydration of the disk. (Doc. 91, p. 282). However, Dr. Ledet had not seen any prior films to know whether this had been caused by trauma prior to the accident in question. (Doc. 91, pp.

282-284). Dr. Ledet relied on the fact that Mulkey had not told him of any prior trauma. (Doc. 91, p. 283). A second MRI showed a much worse condition of Mulkey's cervical spine, and Dr. Ledet said it was possible that there could have been a trauma in between the first MRI and the second MRI. (Doc. 91, p. 285). Dr. Ledet did not place Mulkey on any work restrictions (Doc. 91, p. 290).

Ms. McRevy testified that her predominant pain is in her left shoulder and neck, rather than in her lower back. (Doc. 90-1, p. 25). When McRevy was taken to the hospital after the accident she complained that her neck and head hurt. (Doc. 90-1, p. 26). McRevy and Mulkey were treated for "minor injuries" at the hospital and released that evening. (Doc. 90-1, p. 27-28). McRevy started treating with Dr. Haydel, a chiropractor, two or three weeks after the accident. (Doc. 90-1, p. 29). The medical records indicate that the pains in McRevy's neck and back got considerably better while being treated by Dr. Haydel. (Doc. 90-1, pp. 30-31). McRevy has not been back to see Haydel since June 2007. (Doc. 90-1, p. 31).

When McRevy went to see Dr. Ledet, the records indicate that she complained of problems with the left side of the back of her neck and left shoulder blade, but did not say she had any problem with her lower back. (Doc. 90-1, pp. 35-36).

Immediately after the accident, McRevy was able to exit the vehicle through her door and Mulkey was able to crawl into the front seat and exit out the driver side door. (Doc. 90-1, p. 38). Neither McRevy, nor Mulkey, lost consciousness, had any cuts, or broke any bones in the accident. (Doc. 90-1, p. 38). They both walked around and took pictures of the accident scene with their camera phone. ((Doc. 90-1, p. 39).

Upon review of the record, the court finds that plaintiffs' counsel presented evidence that

could support a substantial verdict, but that the defense counsel elicited testimony and pointed out discrepancies in the medical records that would support a completely contrary verdict. The jury was free to determine which evidence and testimony was credible. "[A] jury verdict is presumed to be correct and should not be set aside on the grounds of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, prejudice, or improper motive. Brown, 636 So.2d at 469 (citing Nemec v. Harris, 536 So.2d 93 (Ala.Civ.App. 1988)). The court finds that there was substantial evidence to support the verdicts and that it would not be a miscarriage of justice to let the verdicts stand. The record does not indicate that the verdict was the result of passion, prejudice, or improper motive. Thus, the court will not grant a new trial based on plaintiffs' contention that the amounts awarded were inadequate.

The court further finds that plaintiffs' alternative motion for additur should be denied "The Supreme Court held in Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), that the Seventh Amendment prevents a court from increasing a jury's award or conditioning the denial of a new trial on the defendant's acquiescence to an additur." Millennium Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1303 (11th Cir. 2007). "Courts recognize an exception to Dimick where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages." Id. (quoting U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1252 (11th Cir. 1997)). However, as discussed above, the extent of plaintiffs' injuries and the amount of damages that should be awarded is disputed by the parties. The jury obviously chose to believe the plaintiffs' claims only to a limited extent. The court has found that there is substantial evidence to support the jury's finding that the correct measure of damages was significantly less than claimed by the plaintiffs. The court may not increase the

amount of the jury's award where the amount of damages is in dispute. Hawkes v. Ayers, 537 F.2d 836, 837 (5th Cir. 1976) (per curiam) (citations omitted).[2]  Thus, plaintiffs' alternative motion for additur will be denied.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for new trial and alternative motion for additur (Doc. 87) are **DENIED**.

**DONE and ORDERED** this 26th day of February, 2010.

/s/   Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.